UNITED STATES v. INTERNATIONAL PRODUCTS CORP. (WILLIAM H. MASSON, INC.)

**No. 6129.**—Invoice dated Beverly Yks., England, December 6, 1937.
Certified December 10, 1937.
Entered at Baltimore, Md., January 17, 1938.
Entry No. 3456.

First Division, Appellate Term

(Decided April 12, 1945)

*Paul P. Rao*, Assistant Attorney General (*Daniel I. Auster* and *Frank E. Carstarphen*, special attorneys), for the appellant.
*Tompkins & Tompkins* (*J. Stuart Tompkins* of counsel) for the appellee.

Before OLIVER and COLE, Judges

OLIVER, Presiding Judge: This case involves an application for review of a decision and judgment of the single judge (Reap. Dec. 5998) and the order denying a motion for rehearing (Reap. Dec. 6039).

The merchandise is described on the invoice as "785 bags Powdered Myrabolam Extract 60% shake" and was exported from England on

December 10, 1937. Entry was made at £19–0–0 per ton of 1,016 kilos, less certain nondutiable charges, on the basis of the invoiced price. The merchandise was appraised at £21–9–0 per ton, less 1 per centum discount, packing included, on the basis of foreign value.

Upon the trial, counsel agreed that there was no export value.

The single judge found a foreign value to exist and further found such value to be £20–6–3 per ton of 1,016 kilos f. o. b. Hull, packing included, less a discount of 3 per centum (Reap. Dec. 5897). Upon rehearing the rate of discount to be allowed from the *per se* price was reduced from 3 per centum to 2 per centum (Reap. Dec. 5998). Counsel for the defendant thereupon filed another motion for rehearing which was denied (Reap. Dec. 6039).

An affidavit of George William Odey, managing director of the manufacturing concern (exhibit 3), establishes that prior to the time of exportation herein, this manufacturer joined the British Extract Manufacturers' Association, which association he describes as:

\* \* \* a body that exists to control and does control and dictate the sales prices and resale prices of Tanning Extracts in the United Kingdom (such "sales prices" being the prices at which a manufacturer, such as ourselves, sold to dealers; such "resale prices" being the prices at which the dealers sold to the consumers or tanners). \* \* \*.

but that sales for exportation to countries other than the United States were made without the exercise of such control.

This merchandise was imported prior to the passage of the Customs Administrative Act of 1938, which confined the sales to be considered in the definition of foreign value, section 402 (c) of the Tariff Act of 1930, to sales for home consumption. Therefore, the principle laid down by our appellate court in the case of *United States* v. *Livingston & Southard, Inc.*, 23 C. C. P. A. (Customs) 214, T. D. 48060, which held that sales for exportation to countries other than the United States should be considered in the determination of foreign value, is controlling here.

The precise question presented here was passed upon by the Court of Customs and Patent Appeals in the case of *United States* v. *Half Moon Mfg. & Trading Co., Inc.*, 28 C. C. P. A. 1, C. A. D. 115, wherein it was held that unrestricted sales for exportation to countries other than the United States did not create a foreign value when sales for home consumption were controlled. See also *United States* v. *Heemsoth-Kerner Corp. (Bauer Type Foundry, Inc.)*, 31 C. C. P. A. 75, C. A. D. 252; and *United States* v. *Graham & Zenger, Inc.*, 31 C. C. P. A. 131, C. A. D. 262.

Counsel for the Government points out that collective exhibit 5, a report of the Treasury representative, shows that only 95 per centum of the firms manufacturing tanning extracts in England were members of the British Tanning Extract Manufacturers' Association and argues

that there is no evidence in the record to show whether or not the remaining percentage of manufacturers freely offered such or similar merchandise for sale. However, the affidavits of the managing director of the manufacturer (exhibits 3 and 4) establish that this manufacturer was the only concern in England manufacturing and dealing in powdered myrabolam extract at wholesale in 1937, and that liquid myrabolam extract is not commercially interchangeable with the powdered form; that the powdered extract is completely soluble by the addition of water, and, by reason of its high concentration, it has a wider variety of uses in a tannery as compared with the liquid product; and that another feature of the powder is that it may be drummed directly into the leather, whereas the use of liquid extracts for this purpose is limited to the extent of its concentration. This testimony stands uncontradicted and in our opinion is sufficient to establish that the powdered and liquid forms of this extract are not similar for customs purposes.

Following the authorities cited above, we hold that no foreign value, as such value is defined in section 402 (c) of the Tariff Act of 1930, exists for such or similar merchandise and that the judgment of the single judge so holding must be reversed.

We further feel that the interests of justice will best be served by remanding this case to the single judge with instructions to restore the same to the calendar in order that the importer may have the opportunity to establish the United States value of the merchandise, if possible, or its cost of production.

Judgment will be rendered accordingly.